UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| DANL W. RAYMOND, )<br>)<br>  Plaintiff )<br>)<br>v. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social Security, )<br>)<br>  Defendant ) | No. 1:12-cv-92-DBH |

### REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Social Security Disability ("SSD") appeal contends that the administrative law judge improperly refused to admit certain evidence, failed to find that certain of his alleged impairments were severe, and failed to evaluate properly the testimony of a lay witness. I recommend that the court affirm the commissioner's decision.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520, *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act only through September 3, 2008, Finding 1, Record at 18; that, through that date, the plaintiff suffered from bilateral supraspinatus tendon tear and status post left tibia fracture, but neither was severe, Findings 3-4, *id*. at 19; and that the plaintiff,

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on December 12, 2012, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

therefore, was not under a disability, as that term is defined in the Social Security Act, at any relevant time, Finding 5, *id*. at 22. The Appeals Council declined to review the decision, *id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at Step 2, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs*., 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Dr. Mainen's Evaluation

The plaintiff complains that the administrative law judge wrongly refused to admit a 2005 report from Michael W. Mainen, M.D., who had examined the plaintiff at the request of his

employer's workers' compensation insurer with respect to a work-related injury he had sustained in 2003. Statement of Specific Errors ("Itemized Statement") (ECF No. 10) at 1-2. The plaintiff asserts that the administrative law judge refused to admit the evaluation at the plaintiff's second hearing because it had not been timely presented before the hearing, despite his attorney's explanation that he had been unaware that the plaintiff's estranged wife had any of the plaintiff's medical records until the day before the hearing. *Id*. at 2.

The plaintiff contends that he was unaware "that this report existed" or that his estranged wife had any of his medical records, until the day before the second hearing, and this excuses his failure to present the report in a timely manner. *Id*. at 3. The administrative law judge stated that "[t]his argument is without merit." Record at 21. The applicable regulation provides that written evidence that is not submitted at least five days before a hearing will not be considered unless the claimant shows that "[s]ome other unusual, unexpected, or unavoidable circumstances beyond your control prevented you from submitting the evidence earlier." 20 C.F.R. § 405.331(b)(3).

The plaintiff does not claim that memory problems or any other impairment prevented him from remembering that he had been examined by a physician in connection with his work-related injury some six years before the hearing, but only three years before his date last insured. Nor does he suggest that anything "prevented" him from inquiring of his estranged wife whether she had any of his medical records. Indeed, he offers nothing beyond his lack of memory as the necessary "unusual, unexpected, or unavoidable circumstances beyond [his] control." That is not enough to meet this rather rigorous standard. The rule itself says that the administrative law judge may decline to consider such evidence, 20 C.F.R. § 405.331(a), and the plaintiff has shown no abuse of that discretion here.

### B.  Severe Impairments

The administrative law judge found that the plaintiff's impairments of bilateral supraspinatus tendon tear and status post left tibia fracture were not severe.  Record at 19.  The plaintiff contends that the testimony of the medical expert at the hearing does not support this conclusion.  Itemized Statement at 9.  He also argues that the administrative law judge contradicted the findings of the physician to whom the agency referred him for a consultative examination.  *Id*. at 11-12.

The administrative law judge stated that "the fundamental issue in this case is the absence of medical data between October 2004 and April 2010, since impairments cannot be established based solely on the claimant's statements of symptoms. . . . [T]here is a dearth of clinical findings to establish a severe impairment within the meaning of the regulations prior to December 2008, the date last insured."  Record at 20.  He went on as follows:

> The contention of bilateral shoulder impairment is not severe prior to the date last insured.  There is no objective data indicative of upper extremity impairments prior to 2010, when a physical examination at Health Access Network reported tenderness upon palpation of the shoulders (Ex. 9F).  The claimant testified that lifting and moving things is painful due to shoulder problems, where they "snap and grind" from work injuries in 1996 and again in 2001.  However, despite the claimant's subjective reports of biceps tendon injury with bilateral arm weakness and shoulder pain, there are no extant clinical reports to show long-standing pain or limited use of the arms or shoulders.
>
> Dr. Webber, an impartial medical expert who is well versed in Social Security disability evaluation, also testified reliably in connection with the shoulder impairments.  He stated that a consultative examination with John Farquhar, M.D. in 2011 did reveal diminished arm motion and strength *at that time* that was supported by December 2010 radiologic findings (Exs. 11F, 13F).  However, Dr. Webber then clarified that there was "very little data" to document when these injuries became severe, especially before the examinations that took place in 2010.

* * *

> The record shows that upon completion of care with Dr. Zolper in October 2004, the claimant sought no medical treatment whatsoever for more than 5 years, until April 2010, when he sought emergency care for a facial rash (Ex. 7F). The claimant stated that the lack of treatment was due to no insurance and income. This argument is not credited. The claimant's assertion of no income is inconsistent with simultaneous reports that he received a workers' compensation settlement in 2005.
>
> * * *
>
> As for the opinion evidence, I have given great credence to hearing testimony from impartial medical expert Dr. Peter Webber. As indicated earlier in this decision, the doctor testified reliably, and consistently with Dr. Farquhar's consultative examination, that while there is clinical evidence to establish *extant* musculoskeletal impairments, there is insufficient evidence to demonstrate that these impairments, either individually or in combination, were of an incapacitating level prior to the date last insured (December 2008). This opinion is also in concurrence with the findings of DDS review physicians, Donald Trumbull, M.D. and Robert Hayes, D.O. (Exs. 5F, 6F), and with which I am in complete accord.

*Id*. at 21-22 (emphasis in original).

The difficulty presented is that the underlying evidence is neither as favorable to the plaintiff as he claims nor as bereft of mention of medical evidence of disability before the date last insured as the administrative law judge would have it. The state-agency reviewing physicians both said that there was insufficient evidence to allow them to opine about the period before the date last insured, but neither of them mentions Dr. Farquhar's consultation report. *Id*. at 309, 318. Dr. Farquhar speaks only of the plaintiff's impairments at the time of examination until the very end of his report, where he responds to the penultimate question on the form he filled out as follows:

> X. THE LIMITATIONS ABOVE ARE ASSUMED TO BE YOUR OPINION REGARDING CURRENT LIMITATIONS ONLY. HOWEVER, IF YOU HAVE SUFFICIENT INFORMATION TO FORM AN OPINION WITHIN A REASONABLE DEGREE OF MEDICAL PROBABILITY AS TO PAST LIMITATIONS, ON WHAT

> DATE WERE THE LIMITATIONS YOU FOUND ABOVE FIRST PRESENT? [Answer:] Biceps injury 2001; [left] leg fracture 2003.

*Id.* at 361. Of course, neither a biceps injury nor a leg fracture is a "limitation" in Social Security parlance; they are possible causes of limitations. In addition, Dr. Farquhar says nothing about past severity of the limitations.

Dr. Webber did have the benefit of Dr. Farquhar's report. *Id.* at 49 (referring to Exhibit 11). When pressed by both the administrative law judge and the plaintiff's attorney on the question of whether the shoulder and leg impairments were severe before the date last insured, Dr. Webber was at best equivocal. At various points, he said the following:

> [T]he history's reviewed in Exhibit 11 [Dr. Farquhar's report]. And the physical examination does show abnormalities on physical examination of the left lower extremity. Muscle scars, reduced muscle mass, left calf, compared to the right. His strength in his foot is 3 over 5. His left lower leg is no more than 1 over 5. Upper leg is 2 over 5, with some limitation on motion of straight-leg raising. So, that is consistent with, I think, his history of having real trouble with that lower extremity. Regarding his upper extremities, again, we have very little data about that, again, until we get into some x-rays that were done within the last couple years. However, again, Exhibit 11 goes into a significant amount of detail regarding the upper extremities, and the neck as well. He apparently had a 1996 injury to the back of the neck. And then following that, in the year 2001, he had ruptured biceps tendons, apparently, on both sides, for which he's been able to compensate for a period of time. When you look, again, at the physical examinations on Exhibit 11, he does show definite reduced range of motion of both upper extremities. His neck shows definite limitation in the range of motion. He does have supporting documents regarding MRIs that were done in December of last year, showing significant injuries, both shoulders, so that the limitations described in the physical examination at Exhibit 11 are supported by radiological studies. So, then, we have a gentleman here who has three extremity with, extremities with significant limitations. It's hard to document longitudinally exactly when these became more, and more, and more severe, but there were injuries that could be expected to progress over a period of time.

\* \* \*

6

> My trouble is trying to get the severity of both shoulders at an earlier date [than October 2010], because they just weren't, and then nobody's attention was particularly drawn to the shoulders, I guess is the best way to put it. Most of it was having to deal with his left lower extremity.
>
> \* \* \*
>
> He has evidence of chronic problems in both shoulders. It's hard to determine the duration, but both shoulders have multi-function dysfunction. In other words, of multiple forms of range of motion limitations, which would be limited by pain. And depending on the amount of scarring, there may be actual inability to go beyond certain ranges in all those different motions. It's difficult for a non-expert in orthopedics to really say how long they have existed. But it does sound like they would be long-term rather than just short-term whatever those two intervals mean.
>
> \* \* \*
>
> I didn't, I don't think, you know, he, he's close to [Listing 1.02], certainly. And he may, actually may equal that on the lower extremity. But there's such a lack of time frame here, it's hard to know. He says it's the same way it's been right along. So, it's, that he could equal that.
>
> \* \* \*
>
> [If the plaintiff equaled the Listing at the time of his injury, u]sually, you see a lot more involvement. And I realize, because of finances, et cetera, he didn't feel he could. But usually, you would, I think, see a bit more activity, medically speaking, over such a long period of time with that kind of a situation. And oftentimes, sometimes these will slowly improve over a period of time.
>
> \* \* \*
>
> I would presume [the atrophy in his lower extremity] took a period of time to develop, but it probably did [exist "back then"].
>
> \* \* \*
>
> [M]ore recently, he has had significant diagnoses of both shoulders and has had to go back for 10 years. But we don't have any true documentation prior to the, prior to last year, about that. So, I really have difficulty saying how severe it was and how far back it went.

*Id.* at 49-51, 52, 59-60, 61-62, 63-64, 86.

The burden of proof at Step 2 is on the claimant, although it is not a particularly heavy one.  Even if the administrative law judge erred in interpreting the ambivalence in Dr. Webber's testimony against the plaintiff, the plaintiff has not shown that the outcome of his application for benefits would necessarily be different if either or both of his claimed impairments had been found to be severe at Step 2.  *See, e.g., Dudley v. Astrue*, No. 2:11-cv-443-NT, 2012 WL 5267555, at *4 (D. Me. Sept. 30, 2012).  An exception to this requirement may be made when an acceptable medical professional's report "essentially suppl[ies] the missing information," *Brackett v. Astrue*, No. 2:10-cv-24-DBH, 2010 WL 5467254, at *7 (D. Me. Dec. 29, 2010), as is the case here with Dr. Farquhar's report.  Still, the problem of pre-date last insured severity remains.

Dr. Farquhar's previously discussed, somewhat cryptic response to the final question on the form he completed could be read, as the plaintiff's counsel does, as a statement that the limitations found to exist in 2011 existed continuously at the same level of severity from the date of the incidents that first caused them, Record at 361, but Dr. Webber did not read them that way.  I am bothered by the fact that the administrative law judge does not mention this entry in Dr. Farquhar's report at all, but it is the administrative law judge's responsibility to choose between competing opinions concerning the effects of an applicant's impairments.  The fact that there is equivocal expert testimony that may reasonably be read to conflict with the administrative law judge's decision does not mean that the decision cannot stand, so long as there is evidence that may reasonably be read to support it.  *See, e.g., Bard v. Social Sec. Admin. Comm'r*, 736 F.Supp.2d 270, 273 (D. Me. 2010).

The plaintiff is not entitled to remand on this basis.  *See Getchell v. Social Sec. Admin. Comm'r*, No. 1:10-cv-00424-JAW, 2011 WL 4458983, at *5-*6 (D. Me. Sept. 22, 2011).

### C. Testimony of Vanessa Raymond

Finally, the plaintiff contends that the administrative law judge's refusal to allow his estranged wife to testify other than by affidavit, and his stated reason for disregarding that evidence, entitle him to remand.  Itemized Statement at 13-16.  He does not further specify the manner in which the administrative law judge's refusal to hear Ms. Raymond's testimony in person was reversible error, and none is apparent.

The administrative law judge's stated reason for rejecting her testimony in the affidavit is that "there is a lack of corroborating clinical evidence to substantiate these assertions[.]"  Record at 22.  It is hornbook Social Security law that only medical evidence may be considered at Step 2 of the sequential evaluation process to determine whether a severe impairment exists.  20 C.F.R. § 404.1528; *O'Brien v. Social Sec. Admin. Comm'r*, No. 1:11-cv-00193-NT, 2012 WL 1041323, at *2 (D. Me. Mar. 23, 2012); *Burnham v. Social Sec. Admin. Comm'r*, No. 1:11-cv-00246-GZS, 2012 WL 899544, at *4 (D. Me. Mar. 15, 2012).  Accordingly, Ms. Raymond's testimony had no bearing on the Step 2 analysis, and the administrative law judge's treatment of her affidavit is irrelevant.

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

*NOTICE*
*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de</u> <u>novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to <u>de</u> <u>novo</u> review by the district court and to appeal the district court's order.*

Dated this 31st day of December, 2012.

                                              <u>/s/  John H. Rich III</u>
                                              John H. Rich III
                                              United States Magistrate Judge